UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SCOTT A. MERRITT,

       Plaintiff,

v.

INTERNAL REVENUE SERVICE;
MICHIGAN DEPARTMENT OF
TREASURY,

       Defendants.

                                  /

Case No. 12-14233
Honorable Thomas L. Ludington

**ORDER OVERRULING PLAINTIFF'S OBJECTIONS, ADOPTING
THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION,
AND DISMISSING PLAINTIFF'S COMPLAINT**

Plaintiff Scott A. Merritt filed this pro se action on September 24, 2012. That same day he filed an application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a)(1), which was granted. Upon review of Plaintiff's objections to Magistrate Judge Binder's recommendation, it is clear that Plaintiff's complaint does not state a claim on which relief may be granted, and the action will be dismissed.

**I**

Plaintiff's complaint was filed "in an effort to resolve a series of disputes with the IRS." Pl.'s Compl. 1, ECF No. 1. Plaintiff alleges that Defendant IRS initially claimed he owed $5018 for the 2005 tax year. *Id.* at 3. With the assistance of a tax advocate, the issue was resolved, and it was determined that Plaintiff instead owed only $120. *Id.* According to Plaintiff, $299 had already been withheld for the 2005 tax year, and this amount should have satisfied the $120 he owed with the remaining $179 returned to him. *Id.* This did not happen. So on May 27, 2011, Plaintiff filed a petition in the United States Tax Court against the Commissioner of Internal

Revenue. Pl's. Compl. Ex. B6. The resolution of that case, should there be one, has not been shared with this Court.

Plaintiff goes on to allege that he was forced to pay an additional $670.83 in order to protect his professional licenses while the exact amount he owed was identified. Pl.'s Compl. 3. Plaintiff admits some of this money was returned, but he believes an additional $177.73 remains outstanding. *Id*. He also claims he is owed $349.57 in interest and penalties, $600 in legal fees, $40.51 in postage, and $2.36 in money order charges. *Id*. at 4. Based on these figures, Plaintiff says the IRS owes him just under $1350. *Id*. But he wants more. Plaintiff asks for treble damages and an additional $100 for the tax tribunal filing fee, "bringing this balance to $3,546.01."[1] *Id*.

At some point during this process, Plaintiff was to receive a refund from the State of Michigan in the amount of $936. *Id*. But this money was intercepted by Defendant Michigan Department of Treasury (MDT) and $659 was confiscated for payments that Plaintiff does not dispute. *Id*. He claims, however, the remaining $277 was turned over to Defendant IRS in order to satisfy the debts discussed above. *Id*. These funds were eventually sent back to Defendant MDT, which has them now, and Plaintiff wants those returned as well.

Plaintiff has other claims against Defendant MDT. "The state of Michigan Treasury . . . exacerbated the situation due to a long standing dispute . . . and intentionally violated procedures and due process on subsequent refunds and credit owed to me since 2005 and as a result the state of Michigan treasury owes the following . . . ." *Id*. Plaintiff's sentence continues for 147 words. He finally lists the additional charges that Defendant MDT owes him: $449 home heating credit from 2008; $136 home heating credit from 2009; $109 home heating credit from 2010; and an

---

[1] While this figure, based on what Plaintiff has put forward, should amount to over $4,000, Plaintiff believes otherwise. But it is clear that Plaintiff is the master of his own complaint, *Holmes Group, Inc. v. Cornado Air Circulation Systems, Inc.*, 535 U.S. 826, 833 (2002), and he will not be required to seek more than he already is.

additional $239 from his 2011 refund. *Id*. at 4–5. "This brings the amount owed by the state of Michigan treasury due to their blatant malfeasance to $933." *Id*. at 5. He goes on:

> Then there are the expenses incurred in dealing with these related matters noted above and are as follows; postage & certified mailings $13.74, legal $650, past intercepted refunds $2,139.57 that were intercepted without notice of their location, unowed [sic] penalty of $1,574.28 based on the 2005 tax return that they elected to process incorrectly. . . . This brings the amount of loses [sic] on the state side of matters to $$4,660.59.[2]

*Id*. Plaintiff again claims he is "entitled to three times the figure noted above bringing the amount owed on the state side of the matter to $13,984.17[3] by mater [sic] of law." *Id*.

Plaintiff then alleges that the two Defendants together owe him $17,530.18[4] in total damages. *Id*. at 6. He tells the Court that he "will look forward to this complex inter-twined series of matters coming to a close in the near future and the appropriate funds being received to resolve these matters once and for all." *Id*.

Magistrate Judge Charles E. Binder reviewed Plaintiff's complaint pursuant to § 1915(e)(2)(B). On November 1, 2012, the magistrate judge issued a report recommending that the complaint be dismissed. Magistrate Judge Binder concluded that Plaintiff has failed to exhaust his remedies against Defendant IRS, and therefore this Court "lacks jurisdiction to entertain [the] cause of action." Report & Recommendation 4 (quoting *Peppers v. United States*, No. 11-2321, 2012 WL 2300688, at *1 (6th Cir. June 18, 2012)). As to Defendant MDT, the magistrate judge recommends that Eleventh Amendment immunity applies for the following reasons: immunity has not been abrogated by statute, Report & Recommendation 4 (quoting *Hutsell v. Sayre*, 5 F.3d 996, 999 (6th Cir. 1993)); and Michigan has not consented to suit. *Id*. (quoting *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545 (6th Cir. 2004)).

---

[2] Again this figure does not add up given all the numbers that Plaintiff is advancing. But, as before, he is the master of his complaint.

[3] $4,660.59 multiplied by three is not $13,984.17. However, it is only off by $2.40.

[4] $3,546.01 added to $13,984.17 *does* equal $17,530.18.

As with his other cases before this Court,[5] Plaintiff objected to the report and Magistrate Judge Binder's involvement. He claims that he has "had to deal with continual malfeasance [on the] part of Charles Binder and as a result [has] filed a formal complaint with the JTC and the Michigan Barr [sic] and this matter is pending." Pl.'s Obj. 1, ECF No. 7.

Plaintiff then addresses the magistrate judge's report, claiming that "the points of contention are simple." *Id*. He says the "IRS collected funds that were not owed to them and these funds were previously required to be returned but only a portion of said funds were returned." *Id*. Plaintiff also claims "the Michigan treasury . . . matters involve again funds that were retained that were not owed." *Id*. As he blames the recommended dismissal of this case on Magistrate Judge Binder's "bias," Plaintiff believes Defendant MDT's actions are "intentional and relating to a long standing hatred between the plaintiff and the representative of the Michigan treasury." *Id*. He does not address the sole question taken up by Magistrate Judge Binder — this Court's jurisdiction to address his claims.

Finally, Plaintiff returns to the magistrate judge, and emphasizes that "further delaying in this matter on the part of Charles Binder will not be tolerated any longer. . . . It is further formally required that he is to be removed from all capacities on all cases involving Scott Albert Merritt (plaintiff) without exception." *Id*.

On December 13, 2012, a hearing was conducted concerning Plaintiff's objection to the magistrate judge's report and recommendation. The Court inquired about Plaintiff's belief that Magistrate Judge Binder harbors extreme bias against him. Plaintiff explained his belief that the magistrate judge's bias stems from his alleged involvement on behalf of the Internal Revenue Service in one of Plaintiff's cases in the late 1990's or early 2000's. When pressed Plaintiff could not provide an exact date, but he assured the Court that the magistrate judge was involved

---

[5] Plaintiff has filed at least seven lawsuits in this Court within the past six months.

in the cases, and that there was a "longstanding history if hatred" between them. Plaintiff acknowledged this is why he wants Magistrate Judge Binder excluded from the proceedings.

Regarding his objection to the report and recommendation itself, Plaintiff maintained that his suit is not preempted by Defendant IRS's grievance process or the Eleventh Amendment. He offered no other support for that contention.

## II

The Supreme Court has recognized that Congress, in enacting the federal *in forma pauperis* statute, " 'intended to guarantee that no citizen shall be denied an opportunity to commence, prosecute, or defend an action, civil or criminal, in any court of the United States, solely because . . . poverty makes it impossible . . . to pay or secure the costs' of litigation." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992) (quoting *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 342 (1948)). At the same time, however, "Congress recognized that 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton*, 504 U.S. at 31 (quoting *Neitzke v. Wiliams*, 490 U.S. 319, 324 (1989)). Responding to this concern, Congress provided § 1915(e)(2), which establishes that a court "*shall* dismiss the case" if the court finds that:

> (A) the allegation of poverty is untrue; or
>
> (B) the action or appeal –
>
>> (i) is frivolous or malicious;
>>
>> (ii) fails to state a claim on which relief may be granted; or
>>
>> (iii) seeks monetary relief against a defendant who is immune from such relief.

Section 1915(e)(2) (emphasis added).

When a plaintiff proceeds without the assistance of counsel, a court is required to liberally construe the document and hold it to a less stringent standard than a similar pleading drafted by an attorney. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nevertheless, a complaint must contain more than legal labels, conclusions, and a recitation of the elements of a cause of action, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); it must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

### III

Plaintiff's objection to Magistrate Judge Binder's involvement with his cases will first be addressed, followed by the sufficiency of Plaintiff's pleadings.

### A

Plaintiff has made very clear that he believes Magistrate Judge Binder is biased against him, and as a result, has interfered with his cases in an attempt to harass him. During the hearing on his objection, Plaintiff acknowledged that the source of this bias is interactions between himself and the magistrate judge on behalf of the IRS in cases over the past fifteen years.

But that is impossible. Magistrate Judge Binder was appointed to his current position in October 1984.[6] He has served dutifully since that time. Plaintiff was born in 1972, so unless he was involved with IRS disputes before his twelfth birthday, he is simply mistaken. More likely, Plaintiff is confusing the magistrate judge with Charles E. Binder of Binder&Binder, "America's Most Successful Social Security Disability Advocates."[7] Magistrate Judge Binder of the Eastern District of Michigan, however, has never been involved with Plaintiff in any capacity aside from the current cases pending on this Court's docket.

---

[6] http://www.mied.uscourts.gov/judges/guidelines/topic.cfm?topic_id=365
[7] http://www.binderandbinder.com/

Further, even if Plaintiff's allegations had merit, filing letters on the Court's docket is not the appropriate solution. The Judicial Conference of the United States – Committee on Judicial Conduct and Disability is fully capable of handling this type of dispute. The process is governed by the Judicial Conduct and Disability Act of 1980, 28 U.S.C. §§ 351–64, and the *Rules for Judicial-Conduct and Judicial Disability Proceedings*, 248 F.R.D. 674 (2008). This Court has no authority over the matter.

Because Plaintiff's objections to Magistrate Judge Binder's involvement in his cases are inappropriate and frivolous — if not defamatory — they will in no way affect the cases currently on file in this Court. Magistrate Judge Binder will continue to act as the gatekeeper for *in forma pauperis* lawsuits filed pursuant to § 1915. If Plaintiff wishes to avoid this reality, he need only pay the necessary filing fees.

**B**

Plaintiff believes that the magistrate judge recommended that his complaint be dismissed because the magistrate judge hates him. Magistrate Judge Binder does not even know Plaintiff. He recommended Plaintiff's complaint be dismissed because it does not state a claim upon which relief can be granted. Magistrate Judge Binder is correct, and Plaintiff's complaint will be dismissed.

**1**

Plaintiff first alleges that Defendant IRS owes him a refund for the 2005 tax year. The United States has waived its sovereign immunity in order to allow taxpayers to file actions seeking tax refunds: "The district courts shall have original jurisdiction . . . over any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected." 28 U.S.C. § 1346(a)(1). However, Congress has imposed certain terms, and the United States has consented to be sued for the recovery of taxes

under the conditions set forth in § 7422 of the Internal Revenue Code. *Martin v. United States*, 833 F.2d 655, 659 (7th Cir.1987). Section 7422(a) of the Internal Revenue Code provides:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

26 U.S.C. § 7422(a). Thus, a taxpayer's filing of an administrative claim with the IRS is a jurisdictional prerequisite to the maintenance of a tax refund suit. *Martin*, 833 F.2d at 658.

The treasury regulations promulgated under § 7422 set out the procedure for filing a formal claim for a refund. *Martin*, 833 F.2d at 659. The purposes of those regulations and the refund claim requirement are to: (1) "ensure that the IRS has been given adequate notice of the nature of the claim and the specific facts upon which it is predicated, permitting administrative review and determination," (2) "give the IRS an opportunity to correct any errors that may have been made," and (3) "limit the scope of refund litigation." *Hefti v. IRS*, 8 F.3d 1169, 1173 (7th Cir. 1993).

Treasury Regulation section 301.6402-2(b)(1) provides:

> The claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof. The statement of the grounds and facts must be verified by a written declaration that it is made under the penalties of perjury. A claim which does not comply with this paragraph will not be considered for any purpose as a claim for refund or credit.

16 C.F.R. § 301.6402-2(b)(1). A credit or refund request which does not comply with this regulation is not "considered for any purpose as a claim for refund or credit." *Id* . Where a claimant did not file a refund claim in compliance with § 301.6402-2(b)(1), he has not satisfied 26 U.S.C. § 7422, and therefore a suit for that refund must be dismissed for lack of jurisdiction.

*See Boyd v. United States*, 762 F.2d 1369, 1371 (9th Cir.1985) (citing *L.E. Myers Co. v. United States*, 230 Ct. Cl. 142, 673 F.2d 1366, 1367 (1982)).

Notably, requesting a refund is not the only avenue for addressing an IRS claim. Alternatively, a plaintiff can file a petition in the Tax Court pursuant to 26 U.S.C. § 6213, which allows the taxpayer to litigate tax liability prior to payment. In contrast with a refund suit, a proceeding under § 6213 allows the taxpayer to litigate first, and if necessary, pay later. *Hamner v. United States*, 4:09-CV-1238, 2010 WL 4131331, at *4 (S.D. Tex. Mar. 9, 2010).

However, once a plaintiff files a petition in the Tax Court, he is precluded from filing a refund action. *Hobbs v. COmm'r, I.R.S.*, CIV. A. 93-10679-MA, 1993 WL 660214, at *1 (D. Mass. Nov. 30, 1993) (citing 26 U.S.C. § 6512(a)). "The filing of the petition in the Tax Court deprives other possible Federal forums of civil tax jurisdiction for years petitioned to the Tax Court." *M.J. Wood Associates, Inc. v. C.I.R.*, 76 T.C.M. (CCH) 700 (T.C. 1998) (citing *United States v. Wolf*, 238 F.2d 447, 449 (9th Cir.1956)).

In this case, Plaintiff has made no indication and has offered no evidence that he filed a refund claim in satisfaction of the requirements of § 7422. Instead, he submitted with his complaint the petition he filed in the United States Tax Court concerning the 2005 tax year. *See* Pl.'s Compl. Ex. B6.

Where, as here, a taxpayer files a timely petition with the United States Tax Court, he gives the Tax Court exclusive jurisdiction over the matter. *Dorl v. Comm'r of Internal Revenue*, 57 T.C. 720, 721 (1972) (citing 26 U.S.C.A. § 6512(a)). "Thereafter, a refund suit in the U.S. District Court for the same tax and the same taxable year is barred. The mere filing of the petition in the Tax Court is enough to deprive a U.S. District Court of jurisdiction for years as to which the petition was filed." *Dorl*, 57 T.C. at 721. Plaintiff filed a petition with the Tax Court

for his 2005 refund, and cannot now bring the same claim in this Court. His complaint as to Defendant IRS will be dismissed.

**2**

Plaintiff's complaint is also deficient as to Defendant MDT because the Eleventh Amendment bars his suit.

Article III, § 2 of the Constitution provides that the federal judicial power extends, among other things, to controversies "between a State and Citizens of another State." Relying on this language, the Supreme Court in 1793 assumed original jurisdiction over a suit brought by a citizen of South Carolina against the State of Georgia. *See Chisholm v. Georgia*, 2 U.S. 419 (1793). The decision "created such a shock of surprise that the Eleventh Amendment was at once proposed and adopted." *Monaco v. Mississippi*, 292 U.S. 313, 325 (1934). The Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

The Amendment's language overruled the particular result in *Chisholm,* but the Supreme Court has recognized that its greater significance lies in its affirmation that the fundamental principle of sovereign immunity limits the grant of judicial authority in Article III. Thus, in *Hans v. Louisiana,* 134 U.S. 1 (1890), the Court held that, despite the limited terms of the Eleventh Amendment, a federal court could not entertain a suit brought by a citizen against his own State. *See also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984). In sum, regardless of the form of relief requested, the states and their departments are immune from suit under the Eleventh Amendment if the state has not waived immunity and Congress has not expressly abrogated the immunity by statute. *Id*. at 98–101.

As to Defendant MDT, the application of the Eleventh Amendment turns on whether it can be characterized "as an arm or alter ego of the state, or whether it should be treated instead as a political subdivision of the state." *Hutsell v. Sayre*, 5 F.3d 996, 999 (6th Cir. 1993) (quoting *Hall v. Medical College of Ohio at Toledo*, 742 F.2d 299, 301 (6th Cir. 1984)).  "The most important factor in resolving this question, however, is whether any monetary judgment would be paid out of the state treasury." *Hutsell*, 5 F.3d at 999 (citing *Estate of Ritter v. University of Mich.*, 851 F.2d 846, 850 (6th Cir. 1988)).  There can be little doubt that a judgment against the Michigan Department of Treasury would be paid out of the State of Michigan treasury.

The Supreme Court has noted that "the sovereign immunity States enjoy in federal court, under the Eleventh Amendment, does generally bar tax refund claims from being brought in that forum." *Reich v. Collins*, 513 U.S. 106, 110 (1994) (emphasis removed) (citing *Ford Motor Co. v. Department of Treasury of Ind.*, 323 U.S. 459 (1945)).  As it stands, Plaintiff has offered no authority for the contention that Congress has abrogated Michigan's Eleventh Amendment immunity in cases like this one.  Further, Michigan has not consented to be sued in civil actions in the federal courts. *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545 (6th Cir. 2004) (citing *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986)).  It follows that Defendant MDT, an arm of the state, remains immune. *See Thiokol Corp. v. Dep't of Treasury, State of Mich.*, 987 F.2d 376, 382 (6th Cir. 1993) (dismissing Michigan Department of Treasury based on Eleventh Amendment immunity); *Lee v. Co-Op Credit Union*, 08-12170, 2009 WL 722714, at *1 (E.D. Mich. Mar. 17, 2009) (same).

Because Defendant MDT is immune from suit, it is appropriate to dismiss Plaintiff's action as to this Defendant as well.

One final note — Plaintiff's complaint will be dismissed with prejudice. The Sixth Circuit has interpreted § 1915(e)(2) to mandate "that a complaint filed by a prisoner proceeding *in forma pauperis* be dismissed with prejudice if it is frivolous or fails to state a claim." *Hix v. Tennessee Dept. of Corrections*, 196 F. App'x 350, 354 (6th Cir. 2006) (citing § 1915(e)(2)). Further, "[t]he language of § 1915(e)(2) does not differentiate between cases filed by prisoners and cases filed by non-prisoners." *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997). It follows that Plaintiff's complaint, although not filed by a prisoner, must be dismissed with prejudice because it fails to state a claim for relief.

### IV

Accordingly, it is **ORDERED** that the magistrate judge's report and recommendation, ECF No. 6, is **ADOPTED**.

It is further **ORDERED** that Plaintiff's objection, ECF No. 7, is **OVERRULED**.

It is further **ORDERED** that Plaintiff's complaint, ECF No. 1, is **DISMISSED** with prejudice.

Dated: December 27, 2012                              s/Thomas L. Ludington
                                                      THOMAS L. LUDINGTON
                                                      United States District Judge

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon Scott A. Merritt at P.O. Box 725, Bay City, MI 48707 by first class U.S. mail on December 27, 2012.

                        s/Tracy A. Jacobs
                        TRACY A. JACOBS

---